## Commonwealth v. Williams

*Logan Bullitt, Assistant District Attorney,* for Commonwealth.

*Joseph D'Annunzio, Assistant Public Defender,* for defendant.

LOWE, *P.J.,* March 26, 1979—This appeal stems from a March 24, 1978 robbery of the S. S. Kresge Store in the Cheltenham Shopping Center. On that Friday afternoon between 4:00 and 4:30 Bernadine Vaughn was in the course of her employment as a cashier at this store. A man in line at Ms. Vaughn's check-out counter approached her as she finished helping a customer and told her to lift up the tray in

the cash drawer of her register.[1] Ms. Vaughn immediately closed the register. The unknown man then opened his jacket and displayed a handgun contained in a shoulder holster. He repeated his order for her to lift the cash drawer and warned that if she did not, he would blow her brains out. Bernadine Vaughn complied with the man's directions. The robber then reached across the counter, scooped up $981 which had been deposited in the drawer, stuffed them in his pocket, and fled.

The young cashier immediately summoned helped by ringing a service bell and calling "Robbery." When James Williams, the store's assistant manager, arrived at Ms. Vaughn's check-out booth, she told him to follow the man in the brown leather jacket. Williams dashed from the store and instantly spotted a man attired as Ms. Vaughn had described. The suspect turned, realized he was being followed, and began to run. Williams gave chase and followed this man to a parking lot where the suspect felon entered what was later described as a white luxury-type automobile. Once inside the vehicle, the suspect turned and brandished his handgun at Williams who ducked behind a parked vehicle. Williams was able to observe the number and background color of the license plate.

The automobile was subsequently traced by the police through the license number recorded by James Williams. It was determined that the vehicle was owned by the Hertz Corporation franchise lo-

---

1. It was explained at trial that during the business day, when large denomination bills were received in payment for purchases, it was store policy to place them in the cash register drawer under the change tray.

cated at the Marriott Motor Lodge on City Line Avenue in Lower Merion Township, this county. The vehicle in question had been rented by defendant, Donald Williams, on March 23, 1978, and returned to the agency on March 27, 1978.

Donald Williams, a cook at the Marriott Motor Lodge, was arrested March 31, 1978, and charged with robbery, theft, assault, recklessly endangering another, terroristic threats, possession of an offensive weapon, and violation of the Pennsylvania Uniform Firearms Act, 18 Pa.C.S.A. §6101 et seq. At the conclusion of the preliminary hearing convened April 10, 1978, defendant was bound over for trial. Verdicts of guilty of robbery, theft of movable property, terroristic threats, and possession of a weapon with intent were received and recorded October 24, 1978.

Following the filing of and argument on postverdict motions, a pre-sentence investigation report was ordered. On February 6, 1979, defendant was sentenced on the robbery charge to undergo a term of imprisonment of not less than six years nor more than twelve years, such sentence to run consecutive to any sentence being served or to be served. On the possession of an instrument of crime with intent charge, defendant was placed on five years county probation to begin upon his discharge from custody. He was also ordered to make restitution in the sum of $981 to S. S. Kresge, payable in the first three years of the probationary period, and to pay a fine of $500 as well as the costs of prosecution within the first three years of probation. Sentence was suspended on the theft and terroristic threats charges.

The first assignment of error concerns the allowance of the in-court identification of Donald Wil-

liams by Bernadine Vaughn. Defendant argues that because the cashier's previous identifications of him[2] were ruled inadmissible at the suppression hearing, her subsequent in-court identification should not have been permitted. Presumably, defendant takes the position that this later identification was tainted by the previous improper photographic display and confrontation. This contention is meritless.

A witness will be permitted to make an in-court identification under circumstances of this variety if it can be demonstrated this identification has an independent origin rendering it free of any taint of the suggestive pre-trial procedures: Com. v. Rodgers, 472 Pa. 435, 372 A. 2d 771 (1977); Com. v. Pemberton, 256 Pa. Superior Ct. 297, 389 A. 2d 1132 (1978); Com. v. Wareham, 251 Pa. Superior Ct. 130, 380 A. 2d 412 (1977); Com. v. Holz, 245 Pa. Superior Ct. 376, 369 A. 2d 452 (1976).

In other words, the test to be applied when determining whether or not the testimony of a witness identifying an accused is admissible is whether ". . . granting [the] establishment of the primary illegality, the evidence to which the instant objection is made has been come at by the exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Com. v. Connolly, 478 Pa. 117, 121, 385 A. 2d 342 (1978) (citations omitted).

---

2. These identifications were made when Ms. Vaughn was shown a photographic line-up by detective John Lynch of the Cheltenham Police Department approximately one week after the robbery and also during the preliminary hearing convened April 10, 1978.

The Commonwealth is not required to prove the independent basis of the testimony beyond a reasonable doubt; rather, it need only be established by clear and convincing evidence: Com. v. Pemberton, supra; Com. v. Cox, 466 Pa. 582, 353 A. 2d 844 (1976). In order to prove an independent basis it must be demonstrated at a suppression hearing that the witness's proposed trial identification "will be reliably based on the witness's observation at the time of the crime, and that the identification was not induced by events occurring between the witness's observations at the time of the crime and the witness's in-court identification." Com. v. Fowler, 466 Pa. 198, 204, 352 A. 2d 17 (1976). See also Com. v. Potter, 478 Pa. 251, 386 A. 2d 918 (1978); and Com. v. Rodgers, supra.

The independent basis of Bernadine Vaughn's identification was sufficiently established at the suppression hearing. At that time it was found as a matter of fact that Ms. Vaughn was a young, bright, high school graduate; she had good eyes and did not wear eyeglasses. She had a full view of this defendant at the time of the robbery from two or three feet for a period of time which she estimated at approximately two minutes. The site where this identification was made was well illuminated by fluorescent lighting and by the sunlight admitted through 12 foot high windows which comprised a wall located no more than 12 feet immediately in front of her check-out counter. The description which she had given of her assailant was quite accurate despite a few minor discrepancies. She had never failed to identify this defendant when she had been confronted with him. The in-court identification of Bernadine Vaughn was properly admitted.

• • •

Another ground on which this appeal is predi-

cated is the supposed error of the court in denying defendant's motion for discovery. This motion requested the court to order the Commonwealth to supply the defense all written, recorded, or oral statements of the Commonwealth's eyewitnesses.

Pre-trial discovery and inspection procedures are governed by Pa.R.Crim.P. 305. This rule does not authorize unlimited pre-trial discovery, but, rather, differentiates between information which the Commonwealth is *mandatorily* required to divulge and that which it *may* be required to disclose. Rule 305B(2)(b) provides that statements of the Commonwealth's eyewitnesses are the type of evidence which *may* be revealed to defendant's attorney prior to trial. The grant or denial of such a request is vested in the discretion of the court. The only time the Commonwealth is absolutely required to furnish copies of its witnesses' pre-trial statements to the defense is at the close of each witness's direct examination at trial: Com. v. Gartner, 475 Pa. 512, 381 A. 2d 114 (1977); Com. v. McFarland, 252 Pa. Superior Ct. 523, 382 A. 2d 465 (1977).

Instantly, the court saw no reason to provide defendant with copies of the witnesses' statements at the pre-trial stage. The transcript of the April 10 preliminary hearing revealed the names and addresses of the Commonwealth's witnesses along with a full record of their testimony. Furthermore, at trial, the defense was supplied with a copy of the witnesses' statements in order to aid in their cross-examination. No prejudice to defendant or error on the part of the court resulted from this procedure.

It is alleged that the court erred in denying defendant's motion to dismiss on the basis of the Commonwealth's failure to comply with the reciprocal notice requirement in connection with an alibi defense. Pa.R.Crim.P. 305C(1)(a) establishes

the mandatory requirement that defendant notify the Commonwealth of any specific information he intends to employ in establishing an alibi defense at trial. It likewise imposes on the Commonwealth the duty to inform the defense of the names and addresses of all witnesses who will be called to rebut this defense. Instantly, defendant claims that he duly notified the district attorney's office of his intended alibi defense, and because he did not receive reciprocal notice, the Commonwealth should not have been permitted to continue. This contention is meritless.

As previously noted, defendant was in possession of the preliminary hearing transcript, and, therefore, had knowledge of the names, addresses, and testimony of the Commonwealth's witnesses. It was fully established before trial that these were the only witnesses the Commonwealth intended to call at trial; there was nothing more to reveal on the Commonwealth's part. Furthermore, even if additional, previously undisclosed witnesses would have been called by the prosecutor, the proper procedure would have been for the trial court to refuse their testimony and not to have dismissed the entire proceeding as defendant contends: Pa.R.Crim.P. 305C(1)(e).

The final defense contention concerns the alleged error of the court in refusing to grant defendant's motion to dismiss. This motion charged assorted violations of constitutional rights. Even though these supposed constitutional abridgements have not been specifically enumerated on appeal, it is presumed that defendant's claim is premised upon the argument that he was denied his right to assistance of counsel at the preliminary hearing and that he was harmfully prejudiced

when a correction in the criminal complaint was allowed during the preliminary hearing.

It was discovered in the course of the preliminary hearing that the last digit of the license number observed by James Williams at the time of the crime had been incorrectly recorded on the criminal complaint. The document was then amended to remedy this mistake. Such a change is proper and allowable in accordance with Pa.R.Crim.P. 150 which provides in pertinent part:

"(a) Informal Defects: No person arrested under a warrant or appearing in response to a summons or citation shall be discharged from custody nor shall any case be dismissed because of any informal defects in the complaint, citation, summons, or warrant, but the complaint, citation, summons or warrant, may be amended at any time so as to remedy any such informality." The official comment to this rule describes informal defects as "errors which do not prevent the substantive content of the document from being plainly understood."

Obviously, the alteration which was made in this criminal complaint was one which remedied an informal defect. The change in the recorded license number did not affect the substantive content of the document as it did not affect the determination of defendant's identity nor did it change or alter the description of the offenses charged. The correction was proper with no resultant prejudice to defendant.

Donald Williams also claims that he was improperly denied assistance of counsel at the preliminary hearing. On the morning of this proceeding, Neil Liebman, Esq., telephoned the District Justice, informed him that he would not be able to be present

to represent defendant due to transportation problems, and asked for a continuance of the matter.[3] The request was refused and the preliminary hearing convened as scheduled with defendant appearing unrepresented.

It is well settled that a defendant is entitled to the effective assistance of counsel at a preliminary hearing: Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999 (1970); Com. v. Redshaw, 226 Pa. Superior Ct. 534, 323 A. 2d 92 (1974). However, even if a criminal defendant is not represented by counsel at this stage, he is not entitled to an automatic dismissal. Rather, the remedy for denial of counsel at the preliminary hearing depends on the specific prejudice occasioned thereby: Com. v. Rines, 247 Pa. Superior Ct. 429, 372 A. 2d 901 (1977); Com. v. Redshaw, supra. If defendant suffers no prejudice, he is entitled to no remedy: Com. v. Gwyn, 449 Pa. 131, 295 A. 2d 73 (1972); Com. v. Rines, supra.

Instantly, defendant was not prejudiced by his lack of representation at the preliminary hearing. As already discussed, the alteration in the criminal complaint was not harmful and would have occurred with or without the presence of defense counsel. Additionally, defendant suffered no prejudice from witness identifications in the absence of counsel. The identifications occurring at the preliminary hearing were suppressed.

3. No appearance of record had been entered by Mr. Liebman in this matter.