J-S47020-19; J-S47021-19; J-S47022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC DIAZ | : | |
| | : | |
| Appellant | : | No. 1286 MDA 2018 |

Appeal from the PCRA Order Entered July 5, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0001985-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC DIAZ | : | |
| | : | |
| Appellant | : | No. 1935 MDA 2018 |

Appeal from the Order Entered October 22, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0001985-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC DIAZ | : | |
| | : | |
| Appellant | : | No. 784 MDA 2019 |

Appeal from the Order Entered April 17, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):
CP-22-CR-0001985-2010

J-S47020-19; J-S47021-19; J-S47022-19

BEFORE: DUBOW, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                          **FILED DECEMBER 16, 2020**

Appellant Eric Diaz appeals *pro se* from the order dismissing his timely first Post Conviction Relief Act[1] (PCRA) petition and the related orders denying his requests for library access and release pending appeal. These appeals involve Appellant's challenges to the legality of the intermediate punishment sentences[2] imposed following revocations of his original 2011 probationary sentence and the conditions of his most recent intermediate punishment sentence. Appellant further claims that the PCRA court erred in dismissing his claims of ineffective assistance of PCRA counsel and by refusing to appoint new PCRA counsel. For the reasons that follow, we conclude that Appellant has not established that he is eligible for relief under the PCRA and affirm in 1286 MDA 2018, dismiss the appeal in 1935 MDA 2018 related to library access, and affirm the order denying relief in 784 MDA 2019 related to his request for release pending appeal.

Appellant's original conviction involved his March 2009 possession of child pornography. On July 12, 2011, Appellant entered a negotiated guilty

_____

[1] 42 Pa.C.S. §§ 9451-9546.

[2] The General Assembly substantially revised the statutes governing county intermediate punishment sentencing during the pendency of this appeal, effective December 19, 2018. *See* 2019, Dec. 18, P.L. 776 No. 115. Those changes, in part, deleted references to county intermediate punishment and substituted the phrase "restrictive conditions of probation" or "probation." *See id.* The changes, however, are not material to the decision herein.

- 2 -

plea to two counts of possession of child pornography.[3] On November 22, 2011, the trial court imposed the negotiated sentences of five years' probation to run concurrently. At the sentencing hearing, the Commonwealth stated that Appellant was determined not to be a sexually violent predator. The trial court advised Appellant of the ten-year sexual offender registration requirements in effect at the time.

Appellant subsequently violated a condition of his original probationary sentence.[4] On March 14, 2012, the trial court imposed a violation of probation sentence of five year's county intermediate punishment, with six months to be served in Dauphin County prison (the first revocation sentence). Order, 3/14/12.

On July 31, 2013, the trial court issued a bench warrant for Appellant's violation of the first revocation sentence. On November 19, 2013, the trial court issued an order releasing Appellant from Dauphin County to the state of Maryland. In May of 2014, Appellant was convicted of a new sexual offense in Maryland. On July 31, 2014, the trial court issued a *capias* for Appellant's return to Pennsylvania.

Following several continuances, the trial court conducted a revocation hearing on October 3, 2016. At the hearing, the Commonwealth argued for a

---

[3] 18 Pa.C.S. § 6312(d).

[4] The record does not contain the details of Appellant's violation of his original sentence of probation.

state term of incarceration. Appellant, through counsel, requested a county term of imprisonment. At the conclusion of the hearing, the trial court sentenced Appellant to five years' county intermediate punishment, with one year in county prison, and a consecutive term of five years' probation (the second revocation sentence). The trial court also ordered sex offender conditions as part of Appellant's supervision. Appellant did not take a direct appeal from the second revocation sentence.

The Commonwealth subsequently charged Appellant with new offenses at CP-22-CR-3178-2017 (3178-2017). According to the public docket in 3178-2017, the charges included six new counts of possession of child pornography. The date of the offenses charged in 3178-2017 ranged from February to April of 2017. The offenses apparently resulted from a search of Appellant's cell phone when he was at a work release center. On May 31, 2017, Dauphin County Adult Probation and Parole issued a detainer for Appellant for a violation of the second revocation sentence.

On October 3, 2017, Dauphin County Adult Probation and Parole released Appellant from "the total confinement phase of the restrictive portion of" the second revocation sentence. However, it appears that Appellant remained in custody in Dauphin County Prison, based on the May 31, 2017 detainer for the violation of the second revocation sentence.

On October 31, 2017, the PCRA court docketed Appellant's *pro se* PCRA petition seeking relief from the second revocation sentence. Appellant asserted that the first and second revocation sentences were illegal because

an intermediate punishment sentence cannot contain a provision for confinement in prison that exceeds ninety days. Appellant's PCRA Pet., 10/31/17, at 4 (citing 42 Pa.C.S. §§ 9756(c.1), 9804(a)). Appellant also cited *Commonwealth v. Milhomme*, 35 A.3d 1219 (Pa. Super. 2011), to claim that the illegality of the first revocation sentence tainted the second revocation sentence. *Id.* Further, Appellant claimed that the second revocation sentence was improper because the VOP court imposed a consecutive sentence when his original plea agreement called for concurrent sentences. *Id.* at 8.

Additionally, Appellant argued that the second revocation sentence contained an illegal condition. In support, Appellant attached to his *pro se* PCRA petition a Dauphin County Adult Probation and Parole form advising him of the following probation condition:

> 12. I understand that all electronic devices including, but not limited to, computers, cameras, video recorders, cell phones, tablets, e-readers and other electronic devices in my residence or under my control are subject to search by the Probation Office.

*Id.* at C1. Appellant asserted this condition was unconstitutional in light of *Commonwealth v. Wilson*, 67 A.3d 736 (Pa. 2013). *Id.* at 8. Appellant also claimed that the trial court impermissibly delegated the imposition of this probation condition to Dauphin County Adult Probation and Parole. *Id.* (citing *Commonwealth v. MacGregor*, 912 A.2d 315 (Pa. Super. 2006)).

Appellant also claimed that he was currently detained for violating the terms of the second revocation sentence. Appellant requested that the

detainer be lifted due to the illegality of the second revocation sentence. *Id.* at 6.

The PCRA court appointed counsel for Appellant. On May 15, 2018, PCRA counsel filed a motion to withdraw and a no-merit letter.[5] PCRA counsel asserted Appellant's claim that a county intermediate punishment sentence could not exceed ninety days of total or partial incarceration lacked merit. Specifically, PCRA counsel suggested that Appellant misread the statutory bases for intermediate punishment, partial confinement, and total confinement. Mot. to Withdraw, 5/15/18, at 5-10 (unpaginated). PCRA counsel also noted that the original plea agreement to impose concurrent sentence did not bind the trial court in a subsequent revocation proceeding. *Id.* at 10.

As to Appellant's assertion that his new charges arose from a search of his cell phone, PCRA counsel stated:

> While counsel understands [Appellant's] new charges are based on a search of a cell phone he allegedly was using or possessed while at the work release center, counsel believes that this issue is best dealt with on direct appeal for his new charges as the conditions are alleged to provide the basis for his new charges and were never previously challenged, at this docket, either on direct appeal or at the time of his resentencing hearings. Thus, this issue possibly may be ruled waived by [Appellant].

*Id.* at 10.

---

[5] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

On June 5, 2018, the PCRA court granted PCRA counsel's motion to withdraw and issued a Pa.R.Crim.P. 907 notice with an accompanying opinion addressing Appellant's issues. First, the PCRA court rejected Appellant's arguments that the second revocation sentence was illegal. As to Appellant's contention that he could not be ordered to serve more than ninety days in county prison as part of a county intermediate sentence, the PCRA court noted:

> In this case, [Appellant] was sentenced in October 2016 to restrictive intermediate punishment—that is, the offender was to be housed full time for a portion of the intermediate punishment program. An intermediate punishment sentence is not the same as a sentence of partial or full confinement as contemplated by 42 Pa.C.S.[ §§] 9755 and 9756.

PCRA Ct. Op. 6/5/18, at 6. The PCRA court also found no merit to Appellant's claim that the original plea agreement bound the trial court to sentence concurrently following a revocation of the original sentence. *Id.*

Second, the PCRA court found that Appellant waived his challenge to the probation condition in the second revocation sentence and, in the alternative, concluded that the claim was meritless. The PCRA court also noted that Appellant's claim targeted "his new docket based upon the search of his person and the search of the cell phone he possessed in violation of the special conditions." *Id.* at 6-7.

On June 21, 2018, the PCRA court received Appellant's *pro se* answer to PCRA counsel's motion to withdraw and the PCRA court's Rule 907 notice. Appellant's answer included a motion for appointment of new PCRA counsel.

Among other claims, Appellant asserted that PCRA counsel was ineffective for failing to meet with him, discuss his claims, and develop his issues. On July 5, 2018, the PCRA court entered the order dismissing Appellant's PCRA petition.

In 1286 MDA 2018, Appellant, acting *pro se*, timely appealed the July 5, 2018 order dismissing his PCRA petition and timely submitted a Pa.R.A.P. 1925(b) statement. The PCRA court filed a responsive opinion.

After taking his appeal from the order dismissing his PCRA petition, Appellant filed *pro se* motions in the PCRA court requesting more library access, which the PCRA court denied on October 22, 2018. Further, he requested release from confinement pending appeal, which the trial court denied on April 17, 2019. This Court docketed Appellant's timely *pro se* appeals from the orders denying additional library access and release pending appeal at 1935 MDA 2018 and 784 MDA 2019, respectively.[6]

**1286 MDA 2018**

In 1286 MDA 2018, Appellant presents fourteen questions, which we have reordered as follows:

---

[6] Additionally, Appellant has filed several *pro se* applications for relief in all three appeals. In 1286 MDA 2018, Appellant filed applications for relief seeking to strike the PCRA court's opinion and for summary relief. In 1935 MDA 2018, Appellant filed an application for extension of time to file a reply brief and an application to strike the Commonwealth's brief. In 784 MDA 2019, Appellant filed applications for an extension of time and to strike the Commonwealth's brief. In light of our disposition herein, we deny Appellant's applications for relief as moot.

[1.] Where a trial court accepts a guilty plea made pursuant to a negotiated plea bargain and imposes a concurrent sentence in compliance with the terms of the plea bargain, following a probation revocation, is the court then bound by the plea bargain to impose concurrent sentences pursuant to **Commonwealth v. Adebaike**, 846 A.2d 759 (Pa. Super. 2004)?

[2.] Whether a trial court can override the requirements set forth in Title 42 Pa.C.S.[] § 9802 - "Eligible Offender" by sentencing a [d]efendant convicted on a sexual offense charge to a sentence of county intermediate punishment probation?

[3.] Whether a trial court may impose a sentence of more than ninety (90) days of incarceration in either partial or total confinement in combination with a sentence of county intermediate punishment probation in violation of Title 42 Pa.C.S.[] § 9755(h) and § 9756(c.1)?

[4.] Whether a sentence imposed at a revocation hearing is illegal if the underlying sentence was illegal pursuant to [**Milhomme**] and if so should both sentences be vacated as legal nullities?

[5.] Is it illegal for the trial court upon sentencing to simply state "Sexual Offender Conditions" and to not specifically delineate each condition separately on a sentencing order and instead have a county probation office(r) draft up a pre-printed document that specifies conditions out individually in contradiction to the precedent set forth in [**MacGregor**] and **Commonwealth v. Vilsaint**, 893 A.2d 753 (Pa. Super. 2006)?

[6.] Is it illegal to impose a condition of probation to authorize a county probation/parole officer to search electronic "data" pursuant to Title 42 Pa.C.S.[] § 9912(d)(2) as "property" does not encompass electronic "data" according to **Riley v. California**, 134 S.Ct. 2473 (2014) as described in **United States v. Lara**, 815 F.3d 605 (C.A.9 (Cal.) 2016)?

[7.] Is the Dauphin County Adult Probation/Parole Department's "Special Conditions for Sexual Offenders" item 12 illegal pursuant to [**Wilson**] and **Commonwealth v. Walter**, 655 A.2d 554 ([Pa. Super.] 1995) as the consent to search clause sets forth no criteria for "when" a search can be conducted and does not provide any form of "neutral" review of the request to search such as the "reasonable suspicion" requirement set forth in Title 42 Pa.C.S.[] § 9912(d)(2)?

[8.] Is it illegal to impose as a part of a sentence of Probation, Parole and/or Intermediate Punishment a condition that prohibits access and/or participation in a social networking website pursuant to either the ruling in **Packingham v. North Carolina**, 137 S. Ct. 1730 ([] 2017), the First Amendment of the United States Constitution and/or Article I, Section 7 of the Pennsylvania Constitution?

[9.] Is court appointed counsel considered to be ineffective when counsel never comes out to see her client who is incarcerated and if counsel continually fails to respond to direct and indirect requests for a visit and for basic information critical to the case?

[10.] Is the [PCRA] court negligent for not responding at all to a Motion to Request New Counsel when a [d]efendant brings up concerns regarding the protection of his Constitutional and Due Process rights as well as concerns of a violation of Pa.R.Crim.P. Rule 904(H)(2)(b) and if so, would said negligence of the court constitute a violation of the Judicial Code of Conduct Rules 2.15(B) and 2.15(D)?

[11.] Is the [PCRA] court negligent for dismissing a PCRA Petition without giving the [d]efendant an ample opportunity to then proceed *pro se*, by privately retained counsel, or not at all pursuant to **Commonwealth v. Dukeman**, . . . 605 A.2d 418 ([Pa. Super.] 1992)?

[12.] Is the [PCRA] court negligent for not holding a **Grazier** hearing [**Commonwealth v. Grazier**, . . . 713 A.2d 81 ([Pa. 1988)] and colloquy with the [p]etitioner to ensure that his decision to proceed *pro se* is knowing, voluntary and intelligent?

[13.] If a judge imposes an initial lawful sentence of probation and another judge fills in at a revocation hearing and imposes an illegal sentence, should the illegal sentence be vacated and remanded back to the original sentencing judge?

[14.] If illegally imposed sentences get vacated by the Superior Court, would it be a violation of the Judicial Code of Conduct Rule 2.11(A)(5) to then have the case be remanded to the same judge who imposed said illegal sentences, because the imposition of sentences constitutes an act of making a judicial decision and to rule in a particular way?

Appellant's Brief at 8-13.

Before addressing Appellant's claims, we initially note that our standard of review from the denial of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted). "We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo*." *Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015) (*en banc*) (citations omitted).

> Section 9542 of Title 42, defines the scope of the PCRA as follows:
>
> This subchapter provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis. This subchapter is not intended to limit the availability of remedies in the trial court or on direct appeal from the judgment of sentence, to provide a means for raising issues waived in prior proceedings or to provide relief from collateral consequences of a criminal conviction.

42 Pa.C.S. § 9542. Our Supreme Court has stated that "[t]he purpose of [PCRA] is not to provide convicted criminals with the means to escape well-deserved sanctions, but to provide a reasonable opportunity for those who have been wrongly convicted to demonstrate the injustice of their conviction." *Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 787 (Pa. 2000) (citation omitted); *see also Commonwealth v. Grafton*, 928 A.2d 1112, 1114 (Pa.

Super. 2007) (stating "[t]he purpose behind the passage of the PCRA was to bring finality to criminal judgments while allowing criminal defendants a fair opportunity to address, and seek redress for, errors that occurred during trial and/or sentencing." (citation omitted)).

To be eligible for relief under the PCRA, a petitioner must establish that he "has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted . . . currently serving a sentence of imprisonment, probation or parole for the crime" or "serving a sentence which must expire before the person may commence serving the disputed sentence." 42 Pa.C.S. § 9543(a)(1)(i), (iii).

Generally, a petitioner may only file a PCRA petition after a conviction and sentence has become final. *Commonwealth v. Leslie*, 757 A.2d 984, 985 (Pa. Super. 2000) (*per curiam*). A petitioner must also demonstrate that his claims were not previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). An issue is waived under the PCRA when "the petitioner could have raised it but failed to do so before trial, at trial, . . . , on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

A critical threshold question in this appeal is whether Appellant is still serving his second revocation sentence. Although a petitioner may seek PCRA relief from VOP proceedings, instantly, Appellant did not file his petition while he was serving his VOP sentence. Rather, Appellant filed his PCRA petition after the Dauphin County Adult Probation and Parole issued a detainer for his alleged violation of a condition of that sentence, but prior to the final

disposition of the alleged VOP before the trial court. Accordingly, it appears that Appellant is no longer subject to a sentence of incarceration or probation, but is currently in custody in Dauphin County Prison based on the probation violation detainer related to the alleged third violation in this case that has yet to be finalized before the appropriate court.

A revocation of an intermediate punishment sentence, like a revocation of probation, is a specialized proceeding upon an original conviction. **Cf.** Pa.R.Crim.P. 708 (relating to hearings and dispositions for a violation of probation, intermediate punishment, or parole); **Martin v. Pa. Bd. of Prob. & Parole**, 840 A.2d 299, 303 (Pa. 2003) (noting that in a state parole case in which the defendant committed a new offense, a detainer "is an outstanding parole-violation charge and essentially constitutes an untried indictment, information, or complaint that is to be resolved at a probation revocation hearing"). Our courts recognize that a defendant may obtain judicial review of a detainer issued upon a violation alleged by a county probation office by filing a petition for writ of *habeas corpus*. **See Commonwealth v. Kelly**, 931 A.2d 694, 695-96 (Pa. Super. 2007) (addressing a challenge to a county probation detainer as a "pre-trial *habeas corpus* case"), *abrogated on other grounds by* **Commonwealth v. Dantzler**, 135 A.3d 1109, 1112 n.5 (Pa. Super. 2016) (*en banc*)).

Moreover, it is well settled that

> when a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing . . . that probable cause exists to believe that a violation

has been committed. Where a finding of probable cause is made, a second, more comprehensive hearing, a [second] hearing, is required before a final revocation decision can be made.

*Commonwealth v. Heilman*, 876 A.2d 1021, 1026 (Pa. Super. 2005) (citation omitted); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973). A defendant has a right to counsel in a revocation proceeding and may also seek suppression of evidence giving rise to the revocation. *See generally Commonwealth v. Arter*, 151 A.3d 149, 167 (Pa. 2016) (holding that the Pennsylvania Constitution extends the application of the exclusionary rule to parole and probation revocation proceedings); *Commonwealth v. Fowler*, 419 A.2d 34, 35 (Pa. Super. 1980) (noting that a magistrate erred in requiring a defendant to proceed uncounseled in a preliminary VOP hearing).

Lastly, if the trial court revokes a defendant's intermediate punishment sentence, the sentencing alternatives available to the court are "the same as the alternatives at the time of the initial sentencing." *See* 42 Pa.C.S. § 9773(b) (repealed eff. Dec. 18, 2019). The provisions for revoking an intermediate punishment sentence under former Section 9773 and revoking a probationary sentence under 9771 are analogous. *See Commonwealth v. Philipp*, 709 A.2d 920, 921 (Pa. Super. 1998); *see also Commonwealth v. Mullins*, 918 A.2d 82, 85 (Pa. 2007) (describing probation as "a suspended sentence of incarceration served upon such lawful terms and conditions as imposed by the sentencing court" and noting that "[p]robation revocation is not a second punishment for the original conviction, but an integral element of an original conditional sentence" (citations omitted)).

- 14 -

In light of the foregoing, it appears that Appellant's attempt to raise his claims in a PCRA petition was premature. Appellant is currently in custody based on detainer for a violation of his intermediate punishment sentence and the filing of the detainer essentially commenced a discrete proceeding for revocation and resentencing based on the original conviction. **See Martin**, 840 A.2d at 303. The PCRA is intended as a remedy for the illegality of a **final** conviction and sentence, not as a means to preview or test possible legal challenges to pending proceedings. Here, Appellant still has ample opportunities to raise his claims in challenges to the detainer, during a violation and revocation hearing in the instant case, as well as pre-trial proceedings on his new charges.

Furthermore, the distinction between the PCRA and alternative methods of addressing Appellant's claims is not a mere formality. If this Court were to construe Appellant's claims under the PCRA, his right to counsel would derive from our rules of criminal procedure. **See Commonwealth v. Laboy**, 230 A.3d 1134, 1138 (Pa. Super. 2020). However, in the course of a violation and revocation proceeding, a constitutional right to counsel may arise, such that counsel's requests to withdraw from representation would be held to a more stringent standard than in a PCRA proceeding or appeal. **See Fowler**, 419 A.2d at 35; **see generally** Pa.R.Crim.P. 122 (discussing right to counsel in criminal proceedings); **Commonwealth v. Wright**, 961 A.2d 119, 134 (Pa. 2008) (noting a defendant may seek change of appointed counsel in a criminal proceeding based on irreconcilable differences); **Commonwealth v.**

***Widgins***, 29 A.3d 816, 817 n.2 (Pa. Super. 2011) (noting that the procedures for withdrawal in ***Anders v. California***, 386 U.S. 738 (1967), which apply in a direct appeal, provide "greater protection" than a ***Turner/Finley*** filing, which applies in PCRA proceedings or appeals from PCRA proceedings).

Similarly, any discussion of the merits of Appellant's claims within the framework of the PCRA would necessarily implicate varying burdens of proof between issues raised in the first instance in a trial court, on direct appeal, and in a PCRA proceeding and a PCRA appeal. ***See*** 42 Pa.C.S. § 9543(a) (noting that a PCRA petitioner must plead and prove all requirements for eligibility for relief); ***compare, e,g.***, ***Commonwealth v. Brown***, 196 A.3d 130, 144 n.6 (Pa. 2018) (noting that "PCRA proceedings bear some similarities to civil actions, including that it is the criminal defendant, rather than the Commonwealth, who must initiate the claim and satisfy the required burden of proof by a preponderance of the evidence" (citation omitted)), ***with*** ***Commonwealth v. Enimpah***, 106 A.3d 695, 701 (Pa. 2014) (discussing Commonwealth's burden in a suppression hearing to produce evidence and prove an accused's constitutional rights were not violated), ***and*** ***Commonwealth v. Wright***, 116 A.3d 133, 137 (Pa. Super. 2015) (noting that the Commonwealth has the burden of proof in a VOP revocation proceeding).

Accordingly, under the unique circumstances of this appeal, we conclude that the PCRA court properly dismissed Appellant's PCRA petition. However, in light of our conclusion that Appellant has not established that he is currently

or will be serving his second revocation sentence, we decline to opine on the merits of the claims raised in this appeal.

**1935 MDA 2018**

With respect to Appellant's appeal from the PCRA court's denial of additional library access, we conclude that Appellant's request for additional library access is moot and dismiss this appeal as it relates to Appellant's claim for PCRA relief in 1286 MDA 2018.

We add that Appellant only contends that this appeal involves a collateral order without addressing any of the merits of his claim. Moreover, the question of whether a prisoner has access to a law library has not been held to be a substantial constitutional right. Rather, as the United States Supreme Court has noted, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (citation and quotation marks omitted). The touchstone of any claim related to prison library access is "meaningful access to the courts" and a defendant must show an actual harm, such as the inability to pursue a legal claim based on the lack of library access. *See id.*

Here, Appellant fails to demonstrate "any actual injury" as it relates to meaningful access to the courts. Accordingly, even assuming we were to consider the merits of this appeal, the deficiencies in Appellant's brief would have required dismissal due to his failure to develop any meaningful appellate

arguments. *See Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (reiterating that "when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." (citation omitted)).

### 784 MDA 2019

Lastly, in 784 MDA 2019, Appellant contends that he is entitled to release under Pa.R.Crim.P 521, which governs bail after a finding of guilt. However, as noted above, Appellant is currently in custody on a detainer for an alleged violation of an intermediate probation sentence when Appellant took this PCRA appeal. Our decision does not prevent Appellant from requesting the trial court to lift the detainer, as in any case in which a detainer is imposed. *See Commonwealth v. Dunleavy*, 805 A.2d 562, 565 (Pa. Super. 2002). Therefore, we affirm the order entered in this appeal to docket 784 MDA 2019.

### Conclusion

In sum, we affirm the PCRA court's order in 1286 MDA 2018 because Appellant failed to demonstrate that he was, or would have been subject, to the terms of the second revocation sentence when he filed the underlying PCRA. We dismiss the appeal in 1935 MDA 2018 regarding the order denying Appellant additional access to the prison library as moot in light of our decision in 1286 MDA 2018 relating to Appellant's PCRA petition. In the appeal at 784 MDA 2019, we affirm the order denying Appellant's request for release

pending appeal under Pa.R.Crim.P. 521, because there is no right to release on bail during the pendency of a PCRA appeal.

For the above reasons, we affirm the PCRA court's order in 1286 MDA 2018. We dismiss the appeal in 1935 MDA 2018 as moot. Order in 784 MDA 2019 affirmed. Applications for relief denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2020